IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | Civil Action No. 3:20-CR-00008-E |
| ROBERT BURNEY CAPPS | § § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Robert Barney Capps' Motion to Revoke Detention Order ("the Motion") [Doc. 23] and the Government's Response to the Motion [Doc. 26]. After careful consideration of the Motion, the Government's Response, the record, the Magistrate Judge's reasons and explanations for entering the Detention Order, and the applicable law, the Court concludes the Motion should be denied and the Detention Order affirmed.

**I. Background**

On January 8, 2020, Capps was charged by indictment with two counts of transporting and shipping child pornography in violation of 18 U.S.C. § 2252A(1)(a). He was alleged to have used the internet, an internet application, and his cellular phone to send and transmit files of minors engaged in sexually explicit conduct and involving the lewd and lascivious exhibition of the genitals of minors, as defined in 18 U.S.C. § 2256.

On January 10, 2020, Capps had an initial appearance hearing before the Honorable Irma Carrillo Ramirez, the Magistrate Judge assigned to this case. The Government did not object to Capps' pre-trial release as long as he was bound by all conditions mandated by law and the pre-trial conditions recommended by Pre-trial Services.

During the hearing, there was extensive discussion about a condition of release that restricted out-of-district travel. Capps expressed his desire to travel, but Judge Ramirez made clear that any travel out of the district would be restricted. Judge Ramirez gave Capps at least four opportunities to ask questions about the conditions of release. At the conclusion of the hearing, Judge Ramirez entered an Order Setting Conditions of Release ("the Order"). Capps signed the Order, affirming his agreement to abide by its conditions. He was arraigned and entered pleas of not guilty to both counts of transporting and shipping child pornography. Capps then was released, subject to the agreed-to conditions set out in the Order.

Just three days after being released, Capps violated the Order by traveling outside the Northern District of Texas. Capps initially denied committing the violation, admitting it only after learning his probation officer had GPS evidence that he traveled out of the district. Probation reported the violation to the Court. Judge Ramirez conducted a second hearing ("the violation hearing") and entered a Detention Order revoking the conditions of Capps' release and ordering his detention [Doc. 17].

Capps then filed the Motion requesting this Court to revoke the Detention Order [Doc. 23].

**II.     Capps' Initial Appearance Hearing and Conditions of the Order**

Capps' ability to travel outside the district was discussed at length during his initial appearance hearing. Early in the hearing, Judge Ramirez plainly told Capps that she was "restricting [his] travel to the Northern District of Texas." Capps' lawyer stated that Capps "has occasion to have to travel for work, and that would be outside the state," but Judge Ramirez explained Capps would have to file a motion with the Court, after the hearing, to address his request for out-of-state travel. Judge Ramirez made clear that, unless and until such a motion was approved, Capps was to abide by the conditions of the Order. When Judge Ramirez asked if Capps

2

understood the conditions she was imposing for his release, he responded, "I do, Your Honor."

Judge Ramirez warned Capps about the consequences of failing to follow the conditions:

> The law requires that I tell you what could happen if you don't follow the conditions I've set for you…. If you violate any condition of release, a warrant can be issued for your arrest, you can be jailed until trial…. Do you understand what could happen if you don't follow the conditions I've set for you?

Capps replied, "I do, Your Honor."

After making clear that a violation of the conditions could result in Capps' confinement, Judge Ramirez gave Capps a second opportunity to clarify any queries he had about the conditions of the Order. "Take your time to go over that [O]rder with [your lawyer]. Ask [your lawyer] any questions. I will be happy to answer any questions." Having no questions at that time, Judge Ramirez asked Capps' lawyer to step aside and review the Order with Capps.

Capps' lawyer then brought up the issue of travel again, asking Judge Ramirez how the location monitoring condition worked:

> Our concern was travel. And if it's-if it's an ankle monitor, it might prohibit travel. If there's some other kind, it may not. And so if I should take that up with Probation, I'm happy to do so.

Judge Ramirez responded that they would need to take that up with Probation, but noted "traveling is generally not permitted" because "it is very difficult to monitor someone while they're traveling." She further explained, "…the Adam Walsh conditions are mandated by law. It's going to be hard to convince the Court that [Capps] should be allowed to travel under these circumstances."

After this exchange, there was a break in the proceedings, and Capps again met with his lawyer. Judge Ramirez resumed the hearing, asking Capps for a third time if he had any questions about the Order: "Did you have an opportunity to ask [your lawyer] any questions

3

you had about [the Order]?"  Capps said, "Yes, but you had already answered the question."  To confirm Capps had no outstanding questions, Judge Ramirez again asked if he had any questions for her.  Capps again raised his desire to be able to travel:

> The competency in my work, Your Honor, involves travel.  I understand that we need to take this up with [the District Court] at another place and time.  I understand the ramifications of the rules and regulations by which I need to abide.  But I also wanted to say that my ability to travel to several consistent locations in the continental United States is critical to my success at work and being able to pay for all of these things I've got to pay for.  And if- my question for you is, would you tell me if you have another idea about how to continue along this line?

Judge Ramirez responded, explaining that Capps' decision to withhold information from his Pre-trial officer likely affected the travel restrictions:

> I don't have any other idea at this time.  I will tell you that it's my- in reviewing the Pre[-]trial Services report, you declined to answer a number of questions, which would have given your Pre[-]trial officer more information with which to give me some alternatives.  So, part of that is for lack of information.

Judge Ramirez also explained some of the legal issues involved in Capps' travel request:

> The purpose in setting these conditions and the purpose behind the Adam Walsh conditions are the protection and safety of the community.  And without enough information to adequately evaluate whether there are alternatives at this time, **these are going to be your conditions**.

(emphasis added).  She again clarified that Capps' failure to give more information hindered her ability to alter Capp's travel conditions in the Order:

> Like I said, I can tell from the Pre[-]trial Services report that there's obviously information that we don't know or don't have. And so it is hard to say at this point whether any variation or modification of the [Order's travel] conditions is warranted without a full understanding of the facts. **So these are your conditions today**…. **[F]or today, this is-these are your conditions**.

(emphasis added).

Judge Ramirez also was candid with Capps about her inability to predict the success of his request to the Court to modify the Order's travel restrictions: "They may or may not change.  I

4

can't tell you that.  **I can just say, based on today's record and where we are and the law, these are your conditions.  All right**." (emphasis added).  Capps responded, "Thank you, Your Honor."

Capps also was made aware that his participation in the Computer and Internet Monitoring Program ("CIM Program") was a condition of his release.  Among other things, the condition required Capps to allow the United States Probation Office ("Probation") to monitor all of his computers and devices using software systems or other means.  At the time, Capps was employed by a company specializing in providing wireless connectivity for computer devices such as smartphones.  Capps used his own personal computer, laptop, and phone for work.

The initial appearance hearing concluded by Judge Ramirez once again asking Capps if he had enough time to go over the Order and giving Capps a fourth opportunity to ask any questions he may have had about the Order.  After affirming that Capps had enough time to review the Order with his lawyer, Judge Ramirez ended the lengthy discussion, stating "So, by signing this [O]rder, are you telling the Court that you fully understand your conditions, you agree to follow those conditions, and you understand what could happen if you do not?" Capps agreed: "I do, Your Honor."

The Order includes a section titled "Advice of Penalties and Sanctions," which reiterates Judge Ramirez's oral warnings and reads "…[v]iolating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, and order of detention…."  Under a section titled "Acknowledgment of the Defendant," which is in bold print, Capps signed under the following statement: "I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above."

5

## III. Capps' Meeting with Probation Officer Evans

Capps met with his probation officer, Lisa Evans, four days after his initial appearance hearing. Evans reiterated the terms of the Order and Judge Ramirez's oral admonition that Capps' travel was limited to the Northern District of Texas. Evans also provided Capps with a travel map of the district.

At the violation hearing, Evans testified that Capps "appeared to understand" his travel restrictions, but was "very distraught" about them. He "explained to [Evans] that he has business at Ericsson and some other companies that are located in Plano, in the Eastern District [of Texas]. Evans, however, told him he could not travel there until his lawyer "file[d] a modification request with the [District] Court." Capps was still "wanting to travel overnight, and [Evans] explained to him that, being on location monitoring, its national policy does not allow for overnight travel, and also the nature of [Capps'] charges is going to prohibit that as well."

Evans also told Capps that he needed to obtain his employer's consent to install computer monitoring software on his computer devices in order to comply with the CIM Program condition of release. Capps told Evans his employer was unaware of his "legal issues."

### Capps' Out-of-District Travel Violation

Evans later learned that GPS locators showed Capps has been in the Eastern District of Texas on January 13, the day before their meeting. Capps had not disclosed that he traveled out-of-district during their meeting. Upon receiving the GPS report, Evans notified Capps "as a courtesy." When she advised that she had to file a violation report informing the Court he had traveled outside the district on January 13, Capps "responded no, he did not." Evans told Capps that GPS had tracked him outside the district, and, only then, did Capps admit to committing the out-of-district travel violation.

6

## IV. Applicable Law

When acting on a motion to revoke a magistrate judge's pre-trial detention order, a district court must perform a de novo review and an independent determination of the proper pre-trial detention or conditions for release. *See United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). Title 18 U.S.C. § 3148(b) provides that a judicial officer *shall* enter an order of revocation and detention if, after a hearing, the judicial officer:

(1) finds that there is

(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; ***or***

(B) clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that

(A) based on the factors set forth in § 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person in the community; ***or***

(B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. §3148(b)(1)-(2) (emphasis added).

A finding that a defendant is unlikely to abide by any condition(s) of release may be established by a preponderance of the evidence. *United States v. Aron*, 904 F.3d 221, 224 (5th Cir. 1990) (citations and quotations marks omitted). With respect to section 3148(b)(2), a judicial officer need not necessarily find that the defendant will flee or pose a danger to the community; the statute clearly provides a finding that the defendant will not abide by any condition or combination of conditions of release is sufficient to justify revocation and detention. *See* 18 U.S.C.§3148(b) (setting out required findings in the disjunctive); *see also United States v. Minor*, 204 F. App'x

7

453, 454–55 (5th Cir. 2006) (per curiam); *Aron*, 904 F.2d at 224 (court relied on finding defendant was unlikely to abide by conditions of release, "rather than upon the presumption that" he would pose danger to community).

V.  **Analysis**

In entering the Detention Order [Doc 17], Judge Ramirez weighed evidence from Capps' initial appearance hearing, evidence elicited during the violation hearing, the record, and the applicable law. She found clear and convincing evidence under 18 U.S.C. § 3148(b)(1)(B) that Capps violated the travel restriction in the Order. Judge Ramirez also found by a preponderance of the evidence that, under 18 U.S.C. § 3148(b)(2)(B), Capps was unlikely to abide by any condition or combination of conditions of pre-trial release.

The record clearly shows Capps failed to comply with the travel restrictions imposed by the Order just three days after the Order was issued. Capps nevertheless contends revocation of the Detention Order is warranted because he failed to understand the geographical boundaries established by the Order. A reading of the transcript from his initial appearance hearing reflects otherwise. Judge Ramirez *repeatedly* asked Capps if he had any questions about the conditions imposed by the Order. The travel restriction was discussed in great detail, and Capps explicitly expressed his clear understanding of the Order's travel restriction: "I understand that we need to take [the Order's travel restriction] up with another judge at another place and time. I understand the ramifications of the rules and regulations by which I need to abide." Judge Ramirez's painstaking efforts to ensure Capps understood the travel restriction condition of his release, along with the other conditions, belie Capps' claim to have misunderstood. Further, the parameters of the travel restriction condition were clearly delineated in the Order. The fact that Capps was found

outside the Northern District three days later, and then lied about it, does not lead this Court to believe his sojourn was accidental.

The record also supports, and the Court agrees with, Judge Ramirez's finding that Capps is unlikely to comply with any conditions of release. In addition to Capps' conduct related to the travel restriction, the evidence shows a lack of compliance with the condition requiring participation in the CIM Program.

Evans first told Capps she needed his employer's consent to install computer monitoring software on his devices during their January 14 meeting. Evans raised the issue again a few days later, and Capps claimed he was "on vacation from his online access tools." He indicated his employer "needed more details," but "he wasn't sure if he was going to provide his employer with those details." Evans reiterated that she would need his employer to verify that he was not on the employer's IT systems.

On January 22, having not received an employer contact, Evans spoke with Capps again. He said he was waiting for his employer to send a letter stating he was suspended from all of its systems. Evan reminded Capps that follow-up with his employer would be required. On January 24, Evans communicated to Capps through an email to his wife that the "delay in having the software installed or a verification call with [Capps'] employer could certainly cause an issue with the Court's expectations for having this resolved." On January 27, Evans suggested Capps might want to provide his employer with a copy of his bond conditions so they could understand what was required.

On January 28, Capps "finally gave [Evans] the green light," and she contacted Capps' supervisor about the need to have the court-ordered software installed. She subsequently spoke with the head of the employer's Human Resources department, who had questions about the

restrictions and conditions. On January 29, Capps discussed "the legal issues in his case" with his employer, and Capps was terminated. Clearly, Capps was concerned about keeping his job, but his delay and lack of forthrightness with both Evans and his employer in complying with the CIM Program condition, in addition to his violation of the travel restriction, support a finding that he is unlikely to abide by conditions of release.

Indeed, Judge Ramirez expressed her concerns to Capps in her closing remarks at the violation hearing: "I told you on Friday what your conditions were, you told me you understood them, and by Monday you violated…. I am not convinced that you're likely to abide by your conditions or combination of conditions because you've already told me once that you understood them and violated them three days later." This Court shares her concerns. Capps is charged with a serious crime. He promised in writing to abide by the conditions of the Order or face the consequences for failing to do so. Despite Capps' claim that he *really* understands the Order now, this Court does not have sufficient confidence to release him with the hopes that, this time, he will live up to his promise.

The Motion also contends the Court should consider whether Capps is a flight risk or a danger to the safety of the community: "Counsel submits that given the fact that Mr. Capps is not a flight risk and is not a danger to the community, the least restrictive means of addressing the issue of pre[-]trial release is to allow Mr. Capps to continue to be supervised, pursuant to the original terms and conditions of pre[-]trial supervision, imposed by the court on January 10, 2020." However, the revocation of Capps' release was based on a finding under section 3148(b)(2)(B) -- and not section 3148(b)(2)(A). *See* 18 U.S.C. § 3148(b)(2)(A), (B). Judge Ramirez's finding under section 3148(b)(2)(B) that Capps is unlikely to abide by any condition or combination of conditions of release is sufficient to justify revocation and detention, and this Court need not

analyze whether a section 3148(b)(2)(A) finding is appropriate. *See Aron*, 904 F.2d at 224; *Minor*, 204 F. App'x at 454–55.

The record in this case presents clear and convincing evidence to substantiate a finding that Capps knowingly and intentionally violated a condition of the Order by leaving the Northern District of Texas. Further, the preponderance of the evidence, including the violation, his dishonesty about it, and his conduct in complying with the CIM Program condition requirements, substantiates a finding that Capps is unlikely to abide by any condition or combination of conditions of release.

## VI. Conclusion

For the reasons stated above, for the reasons found by the Magistrate Judge, and considering all applicable law, this Court finds the record supports the Detention Order revoking Defendant Robert Barney Capps' pre-trial release. The Court, therefore, denies Defendant's Motion to Revoke Detention Order [Doc. 23] and affirms the Detention Order [Doc. 17].

**SO ORDERED**; signed April 6, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE